UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY RIVIECCIO,<br><br>                Plaintiff,<br><br>v.<br><br>RYOBI TECHNOLOGIES, INC., *et al.*,<br><br>                Defendants. | Civil Action No. 21-cv-14208 (JXN)(AME)<br><br>**OPINION** |

**NEALS**, District Judge

Before the Court is Defendants Techtronic Industries, North America, Inc. and TTI Consumer Power Tools, Inc. f/k/a One World Technologies, Inc.'s ("Defendants"[1]) motion to strike *pro se* Plaintiff Anthony Rivieccio's ("Plaintiff") liability expert report. (ECF No. 82.) Plaintiff opposed (ECF No. 83) and Defendants replied (ECF No. 84).[2] The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' motion to strike is **DENIED** *without prejudice*.

---

[1] Plaintiff named Ryobi Technologies, Inc. ("Ryobi") as a defendant. But when Plaintiff filed the complaint, "there was not a legal entity known as [Ryobi]." (Notice of Removal ¶ 4, ECF No. 1.) Ryobi was a Delaware corporation doing business in South Carolina that merged into One World Technologies in 2004. (*Id.*)

[2] Plaintiff also filed a reply to Defendants' reply brief. (Pl.'s Reply Br., ECF No. 85.) The Court declines to consider it. "No sur-replies are permitted without permission of the Judge to whom the case is assigned." Loc. Civ. R. 7.1(d)(6). Plaintiff failed to seek permission from the Court to file a sur-reply. Nor does Plaintiff offer any reason why he should be permitted to file a sur-reply. (*See generally* Pl.'s Reply Br.) All litigants, represented or not, are "bound by this Court's orders, local rules, policies and procedures, as well as the Federal Rules of Civil Procedure." *Rosado v. Lynch*, No. 15-3999, 2017 WL 2495407, at *3 (D.N.J. June 8, 2017) (citation omitted).

I.     **BACKGROUND**

In June 2019, Plaintiff severed two fingers on his left hand while using a 10-inch Ryobi table saw, model number BTS10S ("Saw"). (*See* Ex. A at 9,[3] ECF No. 1; Defs.' Moving Br. 8; ECF No. 82-1.) Two years later, he sued Defendants in New Jersey Superior Court for product liability and breach of express warranty. (Notice of Removal ¶ 7; Ex. A.) Defendants timely removed to this Court.[4] (*See id.*)

Plaintiff first introduced Arthur G. Coons, P.E. ("Coons") as his liability expert in a January 17, 2024 letter to Magistrate Judge Espinosa.[5] (Jan. 17, 2024 Letter, ECF No. 47.) Between January and October, Coons and Plaintiff submitted additional letters outlining Coons's progress on testing the Saw. (*See* Apr. 26, 2024 Letter, ECF No. 54; June 4, 2024 Letter, ECF No. 56; July 27, 2024 Letter, ECF No. 61; Oct. 1, 2024 Letter, ECF No. 67.)

Coons filed his final amended report ("Coons Report") on December 9, 2024. (*See* Am. Report ("Coons Report"); ECF No. 77.) Coons claimed the Saw's blade height adjustment mechanism was defective. (*See id.* at 6, 13.) According to Coons, the mechanism was defective because "the gap between the washer and the mounting plate . . . was improperly adjusted during

---

[3] The Court refers to ECF page numbers.

[4] The Court briefly notes it has subject matter jurisdiction over this action. Federal courts "must have subject matter jurisdiction before reaching the merits of a case." *GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 34 (3d Cir. 2018). Federal courts have jurisdiction in cases between citizens of different states where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332 (a)(1). Here, Plaintiff is a New Jersey resident. (Notice of Removal ¶ 3.) Defendants are Delaware corporations operating in South Carolina. (*Id.* ¶¶ 4-6.) And while Plaintiff failed to include the precise amount of damages he sought, it appears to exceed $75,000 based on the nature of his claims, i.e., that he has suffered severe, permanent, and disabling injuries. *See Morrison v. Spirit Airlines, Inc.*, No. 19-18743, 2019 WL 6907481, at *3 (D.N.J. Dec. 17, 2019) (noting amount in controversy appeared to exceed $75,000 where plaintiff alleged sustaining serious and permanent injuries).

[5] Plaintiff identified Coons one day after Defendants moved for summary judgment. (*See* First Mot. Summ. J., ECF No. 40.) The Court denied that motion without prejudice in March 2024, for failure to file a statement of material facts. (Order Denying First Mot. Summ. J., ECF No. 51.) Defendants renewed their motion the following month. (*See* Second Mot. Summ. J., ECF No. 52.) The Court administratively terminated the motion without prejudice in December 2024, "pending the outcome of the parties' settlement conference with Magistrate Judge Espinosa." (Letter Order, ECF No. 75.)

assembly at the factory." (*Id.* at 6.) Due to the gap, "0.062 [inches of blade adjustment] . . . translates to 0.188 [inches] at the blade tip." (*Id.*) And, because of the increased blade height, Coons asserted the Saw's blade vibrated and wobbled more than normal. (*Id.*) He further criticized the Saw's design as flimsy and unable to absorb vibrations. (*Id.* at 11-12.)

Coons also interviewed Plaintiff. (*Id.* at 18.) During the interview, Plaintiff stated he experienced "sudden violent jerky motions upon engaging a rip cut halfway into the blade." (*Id.*) Coons hypothesized that, on the day of the accident, Plaintiff's central air conditioning unit switched on, drawing power away from the Saw and reducing the speed of the blade. (*Id.* at 13.) As the blade slowed down, it began to jerk and vibrate uncontrollably. (*Id.*) The blade caught onto the wood Plaintiff was cutting and hurled it towards him faster than he could react. (*Id.*) Because this happened very quickly, Plaintiff's hands kept moving towards the blade, making contact and severing two fingers. (*Id.*) To test his hypothesis, Coons attached vibrational instruments to the Saw (*see* Apr. 26, 2024 Letter 2-6) and cut "numerous" pieces of wood with it (Coons Report 18).

On February 20, 2025, Defendants submitted a report from their liability expert, Richard C. Otterbein, P.E. ("Otterbein"). (Feb. 20, 2025 Letter ("Otterbein Report") 17-22, ECF No. 79.) Otterbein stated he inspected and photographed the Saw in November 2021. (*Id.*) Otterbein claimed, "Coons performed certain testing, disassembly, manipulation, and invasive/destructive actions which impact the physical characteristics and arrangement of the [S]aw, thereby negatively affecting [Otterbein's] ability to confirm and evaluate reported conditions." (*Id.*) Otterbein alleged he "was not contacted, advised, or otherwise provided the opportunity to witness the testing, manipulation, disassembly and invasive/destructive actions performed by Mr. Coons prior to the time they were conducted." (*Id.*)

3

Otterbein then identified several purportedly "invasive" or "destructive" actions Coons took on the Saw. First, Otterbein noted it was "evident from the text and photographs contained in Mr. Coons' report that he disassembled the machine by removing the saw body from the stand that accompanied the machine as sold." (*Id.* at 18; *see also* Coons Report 4-6, 11.) According to Otterbein, "[t]his disassembly disturbed the post-accident condition of the saw assembly and negatively impact[ed] [his] ability to confirm, or comment on, Mr. Coons' position concerning the structural integrity of the assembly, as well as preventing [Otterbein] from performing similar testing with the [S]aw in its post-accident condition." (Otterbein Report 18.) "In essence, the disassembly compromised the integrity of the [Saw] for further essential testing." (*Id.*)

Second, when Otterbein initially inspected the Saw's blade height adjustment mechanism, he observed "a significant sawdust build-up." (*Id.*) But the "[p]hotographs incorporated in Mr. Coons' report disclose[d] that the mechanism around the reported gap had been disturbed, including removal of the sawdust." (*Id.*; *see also* Coons Report 6, 14, 16.) Otterbein opined the "sawdust removal compromised the integrity of the [blade adjustment] mechanism, which prevent[ed] [Otterbein] from confirming the post-accident condition and the findings of Mr. Coons." (Otterbein Report 18.)

Third, Otterbein noted the "[p]hotographs included in Mr. Coons' report further disclose wiring and associated electrical components installed within the internal confines of the cabinet base of the machine." (*Id.*; *see also* Coons Report 15, 17.) According to Otterbein, "[a]dding wiring to the [Saw's] electrical system would further compromise the ability of [Otterbein] to accurately evaluate the operating condition of the tool as it existed at the time of the accident." (Otterbein Report 18.) Otterbein thus concluded "[t]he wiring additions changed the post-accident condition

4

of the saw and its components." (*Id.*) Otterbein further claimed he was "not notified of such additions to the product and the conditions relating to those changes." (*Id.*)

Fourth, Otterbein stated the cutting tests Coons performed with the Saw "could result in changes in alignment, blade condition, settings, and operating characteristics of the [S]aw." (*Id.* at 19.) Otterbein averred Coons's tests "negatively impact[ed] [Otterbein's] ability to form a credible response to his reported findings." (*Id.*)

Fifth, Otterbein identified a video Coons produced during discovery which "appear[ed] to depict an electrical contact, seemingly removed from the [Saw]." (*Id.*) An electrical contact energizes or de-energizes a device. (*Id.*) Otterbein stated, "[t]here is no ability to return the switch contact to the assembled/operating condition that existed at the time of the accident." (*Id.*) Otterbein again claimed he "was not informed or invited to witness this disassembly, and the disassembly could have an adverse effect on the future operational characteristics of the [Saw]." (*Id.*)

In sum, Otterbein concluded that, "but for" Coons's actions, he would not be able to perform "meaningful testing, display and analyses of various [S]aw conditions," including:

- static structural and operational vibration analyses, which are no longer viable due to the above-mentioned [S]aw disassembly, electrical system modifications and tool manipulation,
- conducting an operational evaluation and functional testing of the tool, including a video demonstration of the cutting operation being conducted by [Plaintiff] for trial presentation purposes, an activity no longer constructive due to disassembly, post-accident cutting and electrical modifications, i.e., removal of the On/Off switch contact during Mr. Coons' destructive evaluation,
- performing further examination of the undisturbed/unaltered blade elevation mechanism and reported washer/mounting plate gap and determining what effect, if any, the reported gap, if confirmed, posed to the [S]aw performance during operations,
- conducting courtroom operational demonstration(s) with the tool if required and allowed, and,

5

- potential courtroom presentation of the tool as it existed prior to Mr. Coons' destructive evaluation and testing.

(*Id.* at 19-20.) Referencing evidence preservation standards from ASTM and the National Fire Protection Association, Otterbein asserted Coons breached his duty to preserve evidence by altering the Saw without prior notice to Defendants. (*Id.* at 20-22.)

Defendants moved to strike the Coons Report in March 2025. (*See* Mot. to Strike.) They argue the Court should exclude the Coons Report because Coons's testing constituted spoliation and fraudulent concealment. (*See* Defs.' Moving Br.)

## II. LEGAL STANDARD

### A. Spoliation

Spoliation occurs "where evidence has been altered or destroyed." *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012). "Evidence of spoliation may give rise to sanctions." *Mosaid Techs. Inc. v. Samsung Elecs. Co.*, 348 F. Supp. 2d 332, 335 (D.N.J. 2004). Those sanctions include "dismissal of a claim or granting judgment in favor of a prejudiced party; suppression of evidence; an adverse inference, referred to as the spoliation inference; fines; and attorneys' fees and costs." *Id.* "This Court has the authority to impose spoliation sanctions pursuant to the Federal Rules of Civil Procedure and this Court's inherent authority." *Id.*

The decision to impose spoliation sanctions follows a two-step inquiry. *Bull*, 665 F.3d at 73. First, the Court determines if spoliation has occurred. *Id.* Then, the Court considers whether and what sanctions are warranted. *Id.* Spoliation occurs if (1) "the evidence was in the [non-moving] party's control"; (2) "the evidence is relevant to the claims or defenses in the case"; (3) "there has been actual suppression or withholding of evidence"; and, (4) "the duty to preserve the evidence was reasonably foreseeable to the [non-moving] party." *Id.* The party seeking sanctions bears the burden of proof as to each element of the prima facie claim. *Kuhar v. Petzl Co.*, No. 16-

0395, 2018 WL 6363747, at *5 (D.N.J. Nov. 16, 2018), *report and recommendation adopted,* No. 16-395, 2018 WL 6331675 (D.N.J. Dec. 4, 2018). "[T]his is not a balancing test - ergo, every element must be met." *Id.*

### B.    Fraudulent Concealment

New Jersey law "permits plaintiffs to recover in an independent action for harm caused in a prior proceeding by an adversary's spoliation." *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 320 (3d Cir. 2014). "[T]he tort of fraudulent concealment, as adopted, may be invoked as a remedy for spoliation where those elements exist." *Id.* (quoting *Rosenblit v. Zimmerman*, 766 A.2d 749, 758 (N.J. 2001)). To prove the tort, a plaintiff must establish five elements:

> (1) The defendant had a legal obligation to disclose evidence in connection with an existing or pending litigation;
>
> (2) the evidence was material to the litigation;
>
> (3) the plaintiff could not reasonably have obtained access to the evidence from another source;
>
> (4) the defendant intentionally withheld, altered, or destroyed the evidence with purpose to disrupt the litigation; and
>
> (5) the plaintiff was damaged in the underlying action by having to rely on an evidential record that did not contain the evidence defendant concealed.

*Id.* at 320-21 (quoting *Rosenblit*, 766 A.2d at 758). "[W]hether a plaintiff succeeds on the claim in the original litigation or not, there are damages that might be recovered, including punitive damages, in the event that the plaintiff can demonstrate that the loss of the evidence caused that plaintiff to incur costs or expenses in the litigation that would not otherwise have been incurred." *Tartaglia v. UBS PaineWebber Inc.*, 961 A.2d 1167, 1190 (N.J. 2008).

### III.   DISCUSSION

The first, second, and fourth prongs of the spoliation test are easily met. Plaintiff had physical possession of the Saw; the Saw is relevant to this case because it purportedly caused

Plaintiff's injury; and because Plaintiff alleges the Saw caused his injuries, he had a reasonably foreseeable duty to preserve it.

The third prong, "actual suppression," merits closer consideration, however. "[T]he mere destruction or loss of evidence in and of itself does not make out a claim for actionable spoliation; more must be shown." *Susinno v. Work Out World, Inc.*, 333 F.R.D. 354, 361 (D.N.J. 2019) (quoting *Kuhar*, 2018 WL 6363747, at *5). "The actual suppression standard requires 'a showing of intent apart from establishing the alleged conduct as a matter of fact.'" *Flint Grp. Packaging Inks N. Am. Corp. v. Fox Indus. Inc.*, No. 16-3009, 2023 WL 4633925, at *7 (D.N.J. June 29, 2023) (quoting *Masterank Wax, Inc. v. RFC Container, LLC*, No. 19-12245, 2022 WL 19927891, at *5 (D.N.J. Aug. 30, 2022)). "[A] finding of *bad faith is pivotal* to a spoliation determination." *Bull*, 665 F.3d at 79 (emphasis added.). "[W]here there is no showing that the evidence was destroyed in order to prevent it from being used by the adverse party, a spoliation instruction is improper." *United States v. Nelson*, 481 F. App'x 40, 42 (3d Cir. 2012).

Here, Defendants offered no proof of bad faith. They do not allege or argue that Plaintiff and Coons ran tests on the Saw "in order to prevent it from being used by the adverse party." *Id*. This record "simply does not have evidence . . . supporting bad faith intent." *Bull*, 665 F.3d at 80; *Orologio of Short Hills Inc v. The Swatch Grp. (U.S.) Inc.*, 653 F. App'x 134, 145 (3d Cir. 2016) (denying spoliation sanction where court "discerned no allegation by [the moving party] of a nefarious plot to destroy evidence."). Defendants, therefore, do not establish actual suppression or actionable spoliation.[6] Their fraudulent concealment claim falls short for the same reason:

---

[6] The Court also notes Coons "did not destroy the allegedly defective [Saw]. This fact alone distinguishes most of the cases in which plaintiffs have been deprived of the use of evidence necessary to prove their claims." *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994). While Coons disassembled and later tested the Saw, doing so was "necessary to determine whether [Plaintiff] had a meritorious claim against the manufacturer of the [S]aw." *Id.* Moreover, Coons was "confronted with a 'transient' situation in which any handling of the saw altered its condition to some degree. This meant that some alteration over time was inevitable and made it important that an investigation

8

Defendants failed to prove Plaintiff "intentionally withheld, altered, or destroyed the evidence with purpose to disrupt the litigation." *Williams*, 765 F.3d at 320.

Accordingly, Defendants' motion to strike must be denied. However, Defendants stated that, if the Court denied the instant motion, they would seek to depose Coons and file a renewed motion to strike pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). (*See* Defs.' Moving Br. at 5 n.1.) The Court, therefore, denies the instant motion *without prejudice* and grants Defendants leave to depose Coons and file a renewed motion to strike. Defendants shall have thirty days from the date of this Opinion to depose Coons, and thirty days thereafter to file a renewed motion to strike.

### IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to strike the Coons Report (ECF No. 82) is **DENIED** *without prejudice*. An appropriate Order accompanies this Opinion.

**DATED:**  10/31/2025

_____
HONORABLE JULIEN XAVIER NEALS
United States District Judge

---

be conducted promptly." *Id.* Likewise, the photographs Coons took of the Saw "also allow a defense expert some, though admittedly limited, visual access to the saw prior to and immediately following disassembly." *Id.*