**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ANTHONY RIVIECCIO,<br>Plaintiff,<br>v.<br>RYOBI TECHNOLOGIES, INC., *et al.*,<br>Defendants. | Civil Action No. 21-14208 (JXN)(AME)<br><br>**OPINION** |

**NEALS**, District Judge

This opinion resolves three related questions in a product liability lawsuit:

(1) Can *pro se* Plaintiff Anthony Rivieccio ("Plaintiff") reassert his liability expert, Arthur G. Coons ("Coons"), four months after disavowing him?

(2) If Plaintiff can use Coons, is Coons' testimony admissible?

(3) If Coons' testimony is not admissible, must the Court grant Defendants Techtronic Industries, North America, Inc. and TTI Consumer Power Tools, Inc. f/k/a One World Technologies, Inc.'s ("Defendants"[1]) motion for summary judgment?

The Court has carefully considered the parties' submissions and decides this matter following oral argument on October 7, 2026. For the reasons that follow, Plaintiff's request to reinstate Coons (ECF No. 123) is **GRANTED**; Coons' testimony is **EXCLUDED**; Defendants' motion for summary judgment (ECF No. 112) is **GRANTED**; and Plaintiff's cross-motion for summary judgment[2] (ECF No. 115), which Defendants opposed (ECF No. 121), is **DENIED**.

[1] Plaintiff named Ryobi Technologies, Inc. ("Ryobi") as a defendant. But when Plaintiff filed the complaint, "there was not a legal entity known as [Ryobi]." (Notice of Removal ¶ 4, ECF No. 1.) Ryobi was a Delaware corporation doing business in South Carolina that merged into One World Technologies in 2004. (*Id.*)

[2] Improvidently titled as a "motion to appeal to district judge for reconsideration of order to deny plaintiff's motion to file for summary to file for summary judgment."

## I. BACKGROUND

### A. Plaintiff Injures Himself Using an Abandoned Saw and Sues the Manufacturer

The key facts in this product liability lawsuit are undisputed.[3] In 2011, Plaintiff worked for a car dealership. (Pl. Dep. 40:12–19, ECF No. 112-4.) The dealership hired a contractor to do renovation work. (*Id.*) In connection with his work, in 2011, the contractor bought a ten-inch Ryobi table saw, model number BTS10S ("Saw") from Home Depot. (DSMF ¶ 20(B); Pl. Dep. 40:2–5, 43:14–16.) After his work ended, the contractor left the Saw at the dealership. (*See* Pl. Dep. 44:1–5.)

In March or April 2019, the dealership told Plaintiff to take the Saw. (*Id.* at 44:10–11; DSMF ¶ 20(E).) At first, Plaintiff "didn't want to" because he thought it was "a piece of junk." (*Id.* at 44:10–13.) Plaintiff thought the Saw was a "piece of junk" because he observed the contractor "struggl[e] to get a good cut" with the Saw. (*Id.* at 48:2–10.) Nevertheless, Plaintiff took and used the Saw. (DSMF ¶ 20(E).)

On June 22, 2019, Plaintiff began cutting a piece of wood with the Saw. (*See generally id.* ¶ 20(F).) About "four inches into the cut," the cut became "violently rough" and the Saw began

---

[3] The Court derives the undisputed facts from Defendant's statement of material facts (*See* Def.'s Statement of Undisputed Material Facts ("DSMF"), ECF No. 112-1) and record evidence. The Court disregards portions of "the parties' statements of material facts that either lack citation to relevant record evidence and/or contain legal argument or conclusions." *Jones v. Sanko Steamship Co., Ltd*, 148 F. Supp. 3d 374, 380 n.9 (D.N.J. 2015) (citing L. Civ. R. 56.1(a)).

The Court also notes Plaintiff did not comply with Local Civil Rule 56.1(a), which requires the opponent of a summary judgment motion to provide "a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion." Plaintiff did not file a responsive Rule 56.1(a) statement. "[W]here the moving party files a proper statement of material facts and the non-moving party fails to file a responsive statement of disputed material facts, the Court is free to consider the moving party's statement of material facts undisputed and therefore admitted for the purposes of resolving the motion for summary judgment." *Allah v. Bartkowski*, No. 11-3153, 2026 WL 1492836, at *3 (D.N.J. May 28, 2026) (citation omitted). Even so, the Court must "satisfy itself that summary judgment is proper because there are no genuine disputes of material fact and that defendants are entitled to judgment as a matter of law." *Id.* (citation and brackets omitted).

In any event, having reviewed Plaintiff's motion for summary judgment, the Court finds the key facts in this case undisputed. Accordingly, Plaintiff's non-compliance with 56.1(a) does not affect the Court's decision.

"shaking." (*Id.*) In less than a second, Plaintiff's left hand struck the Saw's blade, severing his thumb and index finger. (*See* Pl. Dep. 70:9–16, 76:12–16.)

Two years later, Plaintiff sued Defendants in New Jersey Superior Court for product liability and breach of express warranty. (Notice of Removal ¶ 7; Ex. A.) Defendants timely removed to this Court.[4] (*See id.*)

### B. Plaintiff Hires Coons as an Expert

Plaintiff identified Coons as his liability expert in January 2024.[5] (*See* Jan. 17, 2024 Letter, ECF No. 47.) Coons is a professional engineer who does woodworking as a hobby. (*See* Am. Report ("Coons Report") at *3, ECF No. 77.)

Coons attempted to reconstruct the accident based on an interview with Plaintiff. (*See generally id.* at *18.) In the interview, Plaintiff recounted feeling "sudden violent jerky motions" while using the Saw. (*Id.*) Coons hypothesized that, right before the accident, Plaintiff's three-ton central air conditioning unit switched on, drawing power away from the Saw and reducing the speed of the blade. (*Id.* at *13.) As the blade slowed down, it began to jerk and vibrate uncontrollably. (*Id.*) The blade caught onto the wood Plaintiff was cutting and hurled it towards

[4] The Court briefly notes it has subject matter jurisdiction over this action. Federal courts "must have subject matter jurisdiction before reaching the merits of a case." *GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 34 (3d Cir. 2018). Federal courts have jurisdiction in cases between citizens of different states where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332 (a)(1). Here, Plaintiff is a New Jersey resident. (Notice of Removal ¶ 3.) Defendants are Delaware corporations operating in South Carolina. (Id. ¶¶ 4–6.) And while Plaintiff failed to include the precise amount of damages he sought, it appears to exceed $75,000 based on the nature of his claims, i.e., that he has suffered severe, permanent, and disabling injuries. *See Morrison v. Spirit Airlines, Inc.*, No. 19-18743, 2019 WL 6907481, at *3 (D.N.J. Dec. 17, 2019) (noting amount in controversy appeared to exceed $75,000 where plaintiff alleged sustaining serious and permanent injuries).

[5] Plaintiff identified Coons one day after Defendants moved for summary judgment. (*See* First Mot. Summ. J., ECF No. 40.) The Court denied that motion without prejudice in March 2024, for failure to file a statement of material facts. (Order Denying First Mot. Summ. J., ECF No. 51.) Defendants renewed their motion the following month. (*See* Second Mot. Summ. J., ECF No. 52.) The Court administratively terminated the motion without prejudice in December 2024, "pending the outcome of the parties' settlement conference with Magistrate Judge Espinosa." (Letter Order, ECF No. 75.)

him faster than he could react. (*Id.*) Because this happened very quickly, Plaintiff's left hand kept moving towards the blade, making contact and severing two fingers. (*Id.*)

To test his hypothesis, Coons attached vibrational instruments to the Saw and cut "numerous" pieces of wood while running a two-ton air conditioning unit. (*Id.* at *18). Plaintiff attached the Saw to a twenty-five-foot extension cord; he was unsure if he plugged the Saw into a fifteen- or twenty-amp circuit. (*Id.*) Coons attached the Saw to a seventy-five-foot extension cord, which he plugged into a twenty-amp circuit. (*Id.* at *19.) Coons stated "In the numerous tests I have experienced in ripping wood of the same type and size . . . which [Plaintiff] claims to have been cutting at the time of the incident, with the [Saw], the work for the most part was normally cut as expected." (*Id.* at *18.) Even while running his two-ton air conditioning unit, Coons found he "could not recreate" the kickback that allegedly injured Plaintiff. (*Id.* at *19.)

After disassembling, examining, and testing the Saw, Coons asserted the Saw had two defects. (*See generally* Coons Report.) First, Coons opined the Saw's table was too small, leaving Plaintiff's fingers too close to the blade. (*Id.* at *9.) Second, Coons asserted the Saw's blade adjustment height mechanism was defective because "the gap between the washer and the mounting plate . . . was improperly adjusted during assembly at the factory." (*Id.* at *6.)

**C. The Court Denies Defendants' Motion to Strike**

After learning Coons disassembled the Saw, Defendants moved to strike his testimony in March 2025, arguing the disassembly constituted spoliation and fraudulent concealment. (*See* Mot. to Strike, ECF No. 82.) The Court denied the motion without prejudice in October 2025, as Defendants did not show Coons acted in bad faith. (*See generally id.* at 8–9.) However, the Court granted Defendants leave to depose Coons and file a renewed motion to strike pursuant to *Daubert v. Merrell Dow Pharmaceuticals*, Inc., 509 U.S. 579 (1993).

**D. Defendants Depose Coons**

In November 2025, Defendants deposed Coons. (*See* Coons Dep., ECF No. 104-1.) During the deposition, Coons stated he is a professional freelance engineer. (*Id.* at 10:11–12.) In the past, Coons investigated catastrophic failures of "very large" industrial machines and equipment. (*Id.* at 10:21–11:21.) And he helped draft internal safety standards for "cut-off saws using an industrial setup." (*Id.* at 18:19–21.) As for his experience with table saws, Coons does woodworking "as a hobby" and uses a DeWalt table saw. (*Id.* at 13:11–24.) And in 1977, Coons, then a high schooler, taught seventh graders how to use woodworking tools, including table saws. (*Id.* at 20:8–23.) But Coons admitted he never: (1) worked for or consulted a table saw designer, manufacturer, or retailer (*Id.* at 14:6–8, 14:12–15:3, 19:14–16); (2) toured the inside of a table saw manufacturing plant (*id.* at 15:22–24); (3) helped set table saw safety standards (*id.* at 16:8–11); (4) designed a table saw (*id.* at 16:17–22); (5) conducted a risk benefit analysis on a table saw or power woodworking equipment (*id.* at 37:7–10); (6) read any table saw safety standards[6] (*id.* at 17:8–11); (7) been involved in a matter involving a bladed saw injury[7] (*id.* at 22:4–7); (8) contacted or worked with the United States Consumer Product Safety Commission (*id.* at 25:21–26:1); or (9) reconstructed an accident involving a table saw prior to this case (*id.* at 37:1–4).

When asked about the Saw's alleged design defect—the table size—Coons asserted "that all bench saws are defective because they're not the size of a contractor saw." (*Id.* at 66:18–22.) Yet Coons admitted he could not "point to any standard that supports [his] opinion that this bench saw was defective because the table was too small." (*Id.* at 72:10–14.) Defendants had the following exchange with Coons:

---

[6] Indeed, Coons was unaware about whether published safety standards existed for table saws. (*Id.* at 18:6–10.)

[7] Coons' "only involvement with blade contact" was a 2025 accident where Coons was "operating [a] chain saw and someone died." (*Id.* at 23:1–4.)

> Q. Will you tell me all of your bases for your opinion that the saw is defective because the size is too small? You know your table is too small. Tell me all your bases.
>
> A. Hands-on experience. Working the actual saw, so empirical.
>
> Q. Empirical meaning your own experiences?
>
> A. Yes.
>
> Q. Any other bases besides that?
>
> A. No

(*Id.* at 85:3–12.) As for the Saw's alleged manufacturing defect—the gap between the washer and the mounting plate—Coons stated the following:

> Q. Have you ever seen any specifications for the manufacturer or assembly of this saw?
>
> A. No.
>
> Q. So you don't know what the manufacturer wanted that distance to be; correct?
>
> A. Correct. And that information is usually proprietary.
>
> Q. But you've never seen it?
>
> A. No, I have not.

(*Id.* at 90:6–14.) Coons further claimed he was "the only person" who could identify either the table size or washer gap as defects. (*Id.* at 84:21–25.)

As for his accident reconstruction, Coons conceded he "could have duplicated the amp that [Plaintiff] had at his house and done the testing with that." (*Id.* at 103:17–21.) Coons also admitted his testing could not replicate the Saw's alleged kickback. (*Id.* at 98:2–16; 99:19–100:1.) Further, Coons stated he did not "know exactly" whether Plaintiff's air conditioning unit actually came online when he used the Saw. (*Id.* at 119:24–120:2.)

### E. Plaintiff Disavows Coons

After the deposition, Plaintiff sought "leave to seek a new expert witness to replace Mr. Coons due to . . . his deteriorated mental state." (*See* Mot. for Leave at 2, ECF No. 103.) Defendants opposed. (Defs.' Opp'n, ECF No. 104.) Magistrate Judge Espinosa held a status conference, wherein he asked Plaintiff "are you saying, then, that you don't want to proceed with Mr. Coons as your expert?" (Hearing Tr. at 9:1–3, ECF No. 104-2.) Plaintiff replied "Yes. I'm saying that." (*Id.* at 9:5.) After the conference, Judge Espinosa denied Plaintiff's motion for leave to identify a new liability expert, finding that, "[t]o now repudiate Mr. Coons as his expert witness and replace him with another, based on no more than unsubstantiated assertions about Mr. Coons's purported impairments, Plaintiff would not only restart expert discovery, at a substantial cost to Defendants, but also place Defendants at significant tactical disadvantage." (Mar. 4, 2026 Order at 5–6, ECF No. 106.)

### F. The Parties Move for Summary Judgment

Defendants moved for summary judgment on April 22, 2026. (*See* Mot. Summ. J., ECF No. 112.) Principally, they argue Plaintiff's failure to provide expert testimony for liability or proximate causation is fatal to his product liability claims. (*See* Defs.' Moving Br., ECF No. 112-2.) Plaintiff cross-moved for summary judgment reiterating his arguments that the Saw was unsafe (*see* Pl.'s Mot. Summ. J., ECF No. 115), which Defendants opposed (*see* Defs.' Opp'n to Summ. J., ECF No. 121.)

### G. Plaintiff Moves to Reinstate Coons

On September 1, 2026—over four months after Defendants moved for summary judgment—Plaintiff requested the Court allow him to use Coons as an expert. (*See* Pl.'s Letter, ECF No. 123.) Defendants opposed. (Defs.' Opp'n to Letter, ECF No. 124.) The Court scheduled

a September 23, 2026 status conference to address the issue. (*See* Sept. 14, 2026 Order, ECF No. 125.)

However, on September 22, the Court adjourned the status conference until October 7, 2026. (*See* Sept. 22, 2026 Order, ECF No. 126.) Instead, the Court noted it had the authority to *sua sponte* raise the issue of whether expert testimony is admissible under *Daubert* so long as the Court has an adequate record upon which to base its decision. (*Id.*) The Court determined the record is adequate to make such a decision and directed the parties to submit five-page briefs addressing the issue.

The parties have submitted briefs as to the admissibility of Coons' testimony. (Pl.'s Supp. Br., ECF No. 127; Defs.' Supp. Br., ECF No. 128.) On October 7, 2026, the Court heard oral argument on the issue. These matters are now fully briefed and ripe for a decision.

## II. LEGAL STANDARD

### A. Expert Testimony

Under Federal Rule of Evidence 702, a witness qualified as an expert may provide expert testimony if: (a) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (b) "the testimony is based on sufficient facts or data"; (c) "the testimony is the product of reliable principles and methods"; and (d) "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. The Rule thus imposes "three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability, and fit." *Cohen v. Cohen*, 125 F.4th 454, 460 (3d Cir. 2025) (quoting *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000)).

Courts "must perform a gatekeeping function to ensure the relevance and reliability of expert testimony." *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Prods.*

*Litig.*, 509 F. Supp. 3d 116, 130 (D.N.J. 2020). "In conducting this analysis, courts are to consider 'all aspects of the expert's testing: the methodology, the facts underlying the expert's opinion, [and] the link between the facts and the conclusion.'" *Id.* at 131 (quoting *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 291–92 (3d Cir. 2012)). "Moreover, courts must ensure that expert testimony reflects accepted standards within the relevant scientific and business communities." *Id.* "The party proposing the expert testimony must show that each prong is satisfied by a preponderance of the evidence." *Fabricant v. Intamin Amusement Rides Int. Corp. Est.*, No. 19-12900, 2025 WL 1823143, at *11 (D.N.J. July 2, 2025) (quoting *Oddi v. Ford Motor Co.*, 234 F.3d 136, 144 (3d Cir. 2000)). The Court must "determine reliability in light of the particular facts and circumstances of the particular case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 158 (1999).

**B. Summary Judgment**

Under Rule 56(a), the Court must grant a summary judgment motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party must show no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to "the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.*

The Court may not make credibility determinations or weigh evidence. *Anderson*, 477 U.S. at 255. "All facts and inferences are construed in the light most favorable to the non-moving party." *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). The non-moving party, however,

must offer more than a "mere scintilla" of evidence that a genuine dispute of material fact exists. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) (citation omitted). Furthermore, "a party does not raise a genuine [dispute] of material fact by speculation and conclusory allegations." *Dunkin' Donuts Inc. v. Patel*, 174 F. Supp. 2d 202, 210 (D.N.J. 2001) (citation omitted).

When the parties file cross-motions for summary judgment, the governing standard "does not change." *Clevenger v. First Option Health Plan of N.J.*, 208 F. Supp. 2d 463, 468–69 (D.N.J. 2002) (citing *Weissman v. U.S. Postal Serv.*, 19 F. Supp. 2d 254, 259 (D.N.J. 1998)). The Court must consider the motions independently, in accordance with the principles outlined above. *Goldwell of N.J., Inc. v. KPSS, Inc.*, 622 F. Supp. 2d 168, 184 (D.N.J. 2009); *Williams v. Phila. Hous. Auth.*, 834 F. Supp. 794, 797 (E.D. Pa. 1993), *aff'd*, 27 F.3d 560 (3d Cir.1994). In other words, the Court is not required to grant one motion because it denies the other.

The Court affords *pro se* litigants "greater leeway" than parties represented by counsel. *See Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013). But that flexibility has limits. *Id.* at 245. *Pro se* litigants "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Id.*

## III. DISCUSSION

### A. The Court Grants Plaintiff's Request to Reinstate Coons

Evidentiary rulings, "including the decision to admit or exclude expert testimony," are committed to the Court's discretion. *Taylor v. Shields*, 744 F. App'x 83, 85 (3d Cir. 2018). The first issue before the Court involves Plaintiff's request to reinstate Coons as his expert. Plaintiff identified Coons as a liability expert, withdrew Coons as an expert, and again seeks to use Coons as an expert.

Properly framed, the question is whether Plaintiff, due to his own conduct, must proceed without the expert he previously identified. After considering the relative prejudice to the parties, fairness, and the preference for resolving cases on the merits, the Court will grant Plaintiff's request. In terms of prejudice, the Court notes Plaintiff inexcusably waited until *after* Defendants moved for summary judgment to reinstate Coons. Nor is this the first time Plaintiff shifted his litigation posture in response to a dispositive motion. Plaintiff first identified Coons one day after Defendants initially moved for summary judgment. (*See* First Mot. Summ. J., ECF No. 40.) As Defendants correctly observe, parties are "entitled to some certainty as they prepare for trial." *Roberts v. United States*, No. 09-6212, 2012 WL 2374656, at *5 (D.N.J. June 22, 2012). If the Court allowed Plaintiff to change experts at a whim, discovery could "continue forever." *Id.*

That said, the choice before the Court is not between Coons and a *new* expert; rather, Coons and *no* expert. Barring Plaintiff, a *pro se* litigant, from using his only expert based on his own conduct is a potentially case-ending sanction, preventing a full decision on the merits. Granting Plaintiff's request, on the other hand, only minimally prejudices Defendants. Doing so will not require Defendants to file a *Daubert* motion (as the Court raised the issue *sua sponte*) or a new summary judgment motion (as the Court will consider Defendants' existing motion as filed). Therefore, Plaintiff's request to reinstate Coons is **GRANTED**.

### B. The Court Excludes Coons' Testimony

Though the Court does not bar Coons due to Plaintiff's *conduct*, the Court must still determine whether Coons' testimony is *admissible*. Those are separate questions, as the Court has a "basic gatekeeping obligation" to ensure "all expert testimony" is relevant and reliable. *Kumho*, 526 U.S. at 147.

Though Defendants did not move to exclude Coons under *Daubert*, the Court has leeway in "how to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability." *Id.* at 152. The Court's "inquiry need not take any specific form, and its *sua sponte* consideration of the admissibility of expert testimony is permissible so long as the court has an adequate record on which to base its ruling." *Pugh v. Cmty. Health Sys., Inc.*, 681 F. Supp. 3d 416, 435 (E.D. Pa. 2023) (citation omitted), *aff'd sub nom. Pugh v. Northampton Hosp. Co., LLC*, No. 23-2262, 2024 WL 3581171 (3d Cir. July 30, 2024); *see also Dandy v. Ethicon Women's Health & Urology*, No. 20-431, 2022 WL 1284735, at *14 (D.N.J. Apr. 29, 2022) (collecting cases where courts raised *Daubert* issue *sua sponte*); *cf. Henry v. St. Croix Alumina, LLC*, 572 F. App'x 114, 119 (3d Cir. 2014) ("[T]he District Court properly acted within its discretion in declining to hold a *Daubert* hearing *sua sponte*.").

Here, Coons' lengthy report and extensive deposition form an adequate record for the Court to determine the admissibility of Coons' testimony. *See Henry*, 572 F. App'x at 119 ("The record in this case is immense and was entirely before the District Court when it ruled on the expert testimony."). Accordingly, the Court *sua sponte* turns to the qualification, reliability, and fit of Coons' testimony. *Cohen*, 125 F.4th at 460.

#### *i. Coons is Unqualified as a Liability Expert*

A witness "must be qualified to testify as an expert." *Ford v. Ford Motor Co.*, 311 F. Supp. 3d 667, 673 (D.N.J. 2017) (quoting *Calhoun v. Yamaha Motor Corp.*, 350 F.3d 316, 321 (3d Cir. 2003)). This is a low bar. *See In re Paoli R.R. Yard PCB Litig.* ("*Paoli II*"), 35 F.3d 717, 741 (3d Cir. 1994). An expert needs only "specialized expertise." *In re Hum. Tissue Prods. Liab. Litig.*, 582 F. Supp. 2d 644, 655 (D.N.J. 2008) (quoting *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008)). Specialized expertise means "skill or knowledge greater than the average layman."

*Aloe Coal Co. v. Clark Equip. Co.*, 816 F.2d 110, 114 (3d Cir. 1987). This encompasses a "broad range of knowledge, skills, and training," *Paoli II*, 35 F.3d at 741, including "practical experience as well as academic training and credentials." *Daiichi Pharm. Co., Ltd v. Apotex, Inc.*, No. 03-937, 2005 WL 7979497, at *2 (D.N.J. Nov. 1, 2005) (quoting *Elcock*, 233 F.3d at 741). "The criteria required to qualify an expert turn largely upon the subject matter of the opinion to be offered." *Silipena v. Am. Pulverizer Co.*, No. 16-711, 2024 WL 3219226, at *10 (D.N.J. June 28, 2024) (quoting *Kerrigan v. Maxon Ind.*, 223 F. Supp. 2d 626, 635 (E.D. Pa. 2002)). "If the expert meets liberal minimum qualifications, then the level of the expert's expertise goes to credibility and weight, not admissibility." *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 809 (3d Cir. 1997). "[I]t is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir. 1996).

Coons asserts the Saw had design and manufacturing defects. Yet Coons has never designed a table saw (Coons Dep. 16:17–19); worked with or consulted for a table saw designer or manufacturer (*id.* at 14:12–15:3); been inside a table saw factory (*id.* at 15:22–24); set any safety standards for table saws (*see, e.g.*, *id.* at 25:21–26:1); read any safety standards for table saws (*id.* at 18:6–10); or reconstructed a table saw accident. (*Id.* at 37:1–4). Coons' sole experience comes from recreational woodworking and once teaching seventh-graders how to use a table saw in 1977. But the fact that Coons knows how to use a table saw does not mean he knows how to design, manufacture, or reconstruct an accident involving one. *See Qasim v. Spectrum Brands Holdings, Inc.*, No. 21-18744, 2026 WL 84054, at *6 (D.N.J. Jan. 12, 2026) (excluding fire causation expert whose sole experience came from "owning a sailboat with an isopropyl alcohol stove, and taking

courses at MIT covering isopropyl alcohol fires."); *Yazujian v. PetSmart*, 729 F. App'x 213, 216 (3d Cir. 2018) (excluding retail safety expert whose sole experience was "based on his review of over one hundred retail store manuals, and . . . visits to retail stores where he would walk in and look around."); *United States v. Keszey*, 643 F. App'x 153, 158 (3d Cir. 2016) (excluding snake bite expert who had "had little, if any, training in herpetology and minimal academic exposure to the subject."); *Aloe Coal*, 816 F.2d at 114–15 (holding tractor salesman unqualified to testify about cause of tractor fire); *United States v. Nyce*, No. 20-63, 2022 WL 1214171, at *4 (E.D. Pa. Apr. 25, 2022) ("And while [defendant's experts] may have some experience in breeding animals, nothing in their biographies suggests that they are qualified—or even able, as a veterinarian would be—to similarly interpret [veterinary medical] records.").

Moreover, Coons' professional engineering experience—in which he investigated catastrophic failures of very large industrial machines, not table saws—has "nothing to do with the questions" Coons must address: "whether the Saw was defective because it could have been designed, without compromising its effectiveness or unreasonably increasing its cost, with certain safety features"; whether, when it rolled off the assembly line, the Saw deviated from the manufacturer's standards; and "whether those 'defects' caused [Plaintiff's] injuries." *Florio v. Ryobi Techs., Inc.*, No. 17-5518, 2020 WL 5234924, at *4 (D.N.J. Sept. 2, 2020). "Even under Rule 702's forgiving standard, [Coons] is unqualified to testify as a product design [or manufacturing] expert. [Coons] seeks to opine here on subjects well outside his wheelhouse, and apparently has made little effort to become conversant in the relevant literature before preparing his Report." *Id.* at *5. Accordingly, Coons is unqualified to offer an expert opinion about the design or manufacture of the Saw or the cause of the accident.

### *ii. Coons' Liability Opinions are Unreliable*

Expert testimony must be reliable. *Daubert*, 509 U.S. at 590–91. Reliable testimony is "based on the methods and procedures of science, not on subjective belief and unsupported speculation." *Cohen*, 125 F.4th at 461–62 (quoting *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 80–81 (3d Cir. 2017)). "This inquiry 'applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, [and] the link between the facts and the conclusion.'" *Id.* at 462 (alteration in original) (quoting *ZF Meritor*, 696 F.3d at 291). The question is not "whether a particular scientific opinion has the best foundation, or even whether the opinion is supported by the best methodology or unassailable research." *Id.* (quoting *Karlo*, 849 F.3d at 81). "Instead, the [C]ourt looks to whether the expert's testimony is supported by 'good grounds.'" *Karlo*, 849 F.3d at 81 (quoting *In re TMI Litig.*, 193 F.3d 613, 665 (3d Cir. 1999)). Good grounds include:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*Cohen*, 125 F.4th at 462 (quoting *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 834 (3d Cir. 2020)). But "these factors are neither exhaustive nor applicable in every case." *Kannankeril*, 128 F.3d at 806–07. Though no single factor "is dispositive, some analysis of these factors is necessary." *UGI Sunbury*, 949 F.3d at 834. The Court has "'broad latitude' in determining how to assess the reliability of an expert opinion." *Tyger v. Precision Drilling Corp.*, 832 F. App'x 108, 112 (3d Cir. 2020) (quoting *Kumho*, 526 U.S. at 141–42). While *Daubert* does not require "a paradigm of scientific inquiry," it demands "more than [a] haphazard, intuitive

inquiry." *Oddi*, 234 F.3d at 156. "[A]n expert opinion overly reliant on assumptions absent 'sufficient factual predicates' is a 'castle made of sand.'" *Tyger*, 832 F. App'x at 113 (quoting *Elcock*, 233 F.3d at 755).

Here, Coons based his opinions about the Saw's design flaws entirely on his own experience and intuition. (*See* Coons Dep. at 85:3–12.) "Although there may be some circumstances where one's training and experience will provide an adequate foundation to admit an opinion and furnish the necessary reliability to allow a jury to consider it, this is not such a case." *Oddi*, 234 F.3d at 158. Further, Coons did not perform any testing "to inform his criticism of the Saw's design or to substantiate his design proposals." *Florio*, 2020 WL 5234924, at *6. This alone is "fatal for his designation as an expert." *Id.* Moreover, Coons acknowledged he never reviewed "any specifications" for manufacturing the Saw and did not know the manufacturer's intended distance between the washer and mounting plate. (*See* Coons Dep. 90:6–14.) Nor did Coons consider (a) whether the accident could not have occurred "at this point" in the Saw's lifespan, had there been no manufacturing defect, *Scanlon v. Gen. Motors Corp., Chevrolet Motor Div.*, 65 N.J. 582, 593 (1974); (b) any other possible causes of the Saw's failure, *Jakubowski v. Minn. Min. & Mfg.*, 42 N.J. 177, 184 (1964); or (c) whether the accident was not "solely the result of causes other than" the Saw's alleged manufacturing defect, *Myrlak v. Port Auth. of N.Y & N.J.*, 157 N.J. 84, 104 (1999). Instead, Coons simply assumed the manufacturer placed the washer and mounting plate too far apart, which must have caused the accident. But this is precisely the kind of "haphazard, intuitive inquiry" the Court must exclude. *Oddi*, 234 F.3d at 156.

Finally, Coons did not reliably reconstruct the accident. Coons hypothesizes that (a) based on his own woodworking experience, Plaintiff's injury sounded like a kickback accident (Coons Report at *8), particularly because, in his estimation, Plaintiff had "very good" machine handling

skills (*id.* at *18); (b) kickback can occur when power is drawn away from a table saw (*id.* at *13); (c) a large air conditioner could draw power away from a table saw (*id.* at *18–19); and (d) Plaintiff had a very large air conditioning unit. (*Id.*) Therefore, Coons determined, Plaintiff's air conditioning unit came online while he was using the Saw, causing kickback. (*Id.*) But the Coons Report offers

> no reference to material, publication or literature describing the failure scenario he presented, no evidence that his methodology was subjected to peer review or that it is generally accepted, no outside documentary evidence, aside from his own report, supporting his conclusions, no evidence concerning any known or potential error rates in his testing, and no control standards.

*Meadows v. Anchor Longwall & Rebuild, Inc.*, 306 F. App'x 781, 789 (3d Cir. 2009). And Coons' "own testing did not support his hypothesis." *Id.* at 789–90. To bridge the significant analytical gap between Coons' data and his opinions, Coons relies on his own expertise and intuition rather than any evidence. *Id.* at 790. Accordingly, his accident reconstruction opinion is unreliable.

***iii. Coons' Testimony Does Not Fit the Proceedings***

"An expert's testimony 'fits' the proceedings, if it 'will help the trier of fact to understand the evidence or to determine a fact in issue.'" *Cohen*, 125 F.4th at 464 (quoting Fed. R. Evid. 702(a)). Fit "goes primarily to relevance." *Id.* (quoting *Karlo*, 849 F.3d at 81). An expert's "bare conclusions are not admissible under [the fit requirement] of Rule 702 of the Federal Rules of Evidence." *Snead v. Bally's Casino*, 700 F. Supp. 3d 203, 216 (D.N.J. 2023) (alteration in original) (quoting *H.M. ex rel. B.M. v. Haddon Heights Bd. of Educ.*, 822 F. Supp. 2d 439, 448 (D.N.J. 2011)). Such an opinion is "of no assistance to the trier of fact." *Silipena*, 2024 WL 3219226, at *14 (D.N.J. June 28, 2024) (quoting *Tannock v. N.J. Bell*, 223 N.J. Super. 1, 7 (N.J. Super. App. Div. 1988)). Rather, an expert must give the "why and wherefore" underlying their opinion. *Snead*,

700 F. Supp. 3d at 216 (quoting *Iudici v. Camisa*, No. 12-3466, 2022 WL 3998295, at *2 (D.N.J. Sept. 1, 2022)).

Coons does not give the "why" or "wherefore" underlying his opinions. Coons simply asserts the Saw "was at fault for the incident . . . due to not having enough table area to manually position work material into the blade for a rip cut." (Coons Report at *9.) He never explains *why* a larger table would have prevented the accident, or whether such a change would be feasible or effective. Similarly, Coons concludes the blade height adjustment unit "was improperly adjusted during assembly at the factory" without identifying any basis for his opinion. (*Id.* at *6.) Moreover, Coons offers no independent analysis for how the accident occurred. He simply accepts Plaintiff's version of events. That is of no assistance to the factfinder. *See Faragalla v. Otundo*, 626 F. Supp. 3d 783, 788 (D.N.J. 2022) (holding expert's opinion lacked "sufficient factual foundation" where it was "solely derived from [plaintiff's] representations.").

Because Coons is not qualified to testify about table saw design, table saw manufacture, or accident reconstruction, his opinions are unreliable, and they would not assist the factfinder, his testimony must be **EXCLUDED**.[8]

[8] Plaintiff argues "[t]he Court can limit any unsupported causal conclusion without excluding all [of Coons'] testimony." (Pl.'s Supp. Br. at 3.) Not so here. To be sure, in some cases, portions of an expert's testimony can withstand *Daubert* scrutiny. *See, e.g.*, *Kelley v. Reyes*, No. 19-17911, 2026 WL 102896, at *2–4 (D.N.J. Jan. 14, 2026) (barring police officer from testifying as social psychology expert, but permitting officer to testify about law enforcement policies and procedures). This is not such a case. Coons exclusively offers opinions about liability. Because Coons may not testify as a liability expert, all his testimony is inadmissible. Nor may Coons testify as a non-expert. A lay witness may only give opinions: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. An opinion is "rationally based on the witness's perception" if the witness has "firsthand knowledge of the factual predicates that form the basis for the opinion." *Gov't of Virgin Islands v. Knight*, 989 F.2d 619, 629 (3d Cir. 1993). Coons does not have firsthand knowledge of the accident, the Saw's design, or the Saw's manufacture. He neither witnessed the accident, nor observed the Saw's design, nor watched the Saw roll off the assembly line.

### C. The Court Grants Defendants' Summary Judgment Motion

#### *i. Product Liability Claim*

The New Jersey Products Liability Act ("NJPLA"), N.J.S.A. 2A:58C-2, provides "the sole method to prosecute a product liability action."[9] *Clements v. Sanofi-Aventis, U.S., Inc.*, 111 F. Supp. 3d 586, 596 (D.N.J. 2015) (quoting *Tirrell v. Navistar Int'l, Inc.*, 248 N.J. Super. 390, 398–99 (App. Div. 1991)). To state a products liability claim, the plaintiff must show (1) the product was defective, (2) that the defect existed when the product left the manufacturer's control, (3) the defect proximately caused injuries to the plaintiff, and (4) the plaintiff was a reasonably

---

[9] The Court briefly notes that, because Plaintiff raises only state law claims, the Court must determine which state's law to apply. Federal courts sitting in diversity must apply the forum state's choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). New Jersey is the forum state.

New Jersey employs a two-step choice of law analysis. The first question "is whether the laws of the states with interests in the litigation are in conflict." *In re Accutane Litig.*, 235 N.J. 229, 254 (2018) (citation omitted). "There is a conflict if there is a distinction between the laws of the two jurisdictions, and that distinction would be outcome-determinative." *Alsaidi v. Wolfgang Puck Catering & Events, LLC*, 814 F. Supp. 3d 517, 525 (D.N.J. 2025). "If there is no conflict, then the forum state applies its own laws." *Id.*

If there is a conflict, the Court must determine which state has the "most significant relationship" to the parties or issues. *P.V. ex rel. T.V. v. Camp Jaycee*, 197 N.J. 132, 136 (2008). In personal injury cases, the Court presumes "the law of the state where the injury occurred applies." *Accutane*, 235 N.J. at 259. The presumption may be overcome if "some other state has a more significant relationship with the parties and the occurrence based on an assessment of each state's contacts." *Id.* (citation omitted).

Here, the only states with connections to this case other than New Jersey are Delaware (where Defendants are incorporated) and South Carolina (where Defendants principally do business). It is unclear whether Delaware or South Carolina law conflict with New Jersey's product liability laws. But any distinction is academic. Even if there is a conflict, this is a personal injury case. The injury occurred in New Jersey. So, the Court presumes New Jersey law should apply. The Court sees no reason why Delaware or South Carolina have a greater interest in this case. Accordingly, New Jersey law applies.

foreseeable or intended user. *Myrlak*, 157 N.J. at 97. A defective product "is not reasonably fit, suitable, or safe for the ordinary or foreseeable purpose for which it is sold." *Id.*

**a. Design Defect**

New Jersey courts use "a seven-factor 'risk-utility' test to gauge whether a product was defectively designed." *Toms v. J.C. Penney Co.*, 304 F. App'x 121, 124 (3d Cir. 2008). These factors are:

> (1) the usefulness and desirability of the product; (2) the likelihood and seriousness of injury; (3) the availability of a substitute product; (4) the manufacturer's ability to eliminate the danger without impairing the product's utility; (5) the user's ability to avoid danger by due care; (6) the user's anticipated awareness of the danger considering general public knowledge or the obvious condition or the existence of suitable warnings or instructions; and (7) the feasibility of the manufacturer's spreading the loss by setting the price or carrying liability insurance.

*McGarvey v. G.I. Joe Septic Serv., Inc.*, 293 N.J. Super. 129, 142 (App. Div. 1996) (quoting *Johansen v. Makita USA, Inc.*, 128 N.J. 86, 96 (1992)).

Plaintiff needs expert testimony to prove the Saw had a design defect. Under New Jersey law, "expert testimony is required when 'a subject is so esoteric that jurors of common judgment and experience cannot form a valid conclusion.'" *Hopkins v. Fox & Lazo Realtors*, 132 N.J. 426, 450 (1993) (quoting *Wyatt by Caldwell v. Wyatt*, 217 N.J. Super 580, 591 (App. Div. 1987)). While the average person may have some familiarity with a table saw, the physics, mechanics, feasibility, practicality, and cost-effectiveness of comparative table saw designs unquestionably fall "outside of the common knowledge of the factfinder" and depend "on scientific, technical, or other specialized knowledge." *Jerista v. Murray*, 185 N.J. 175, 199 (2005). *See Hoff v. Cap. Brands, LLC*, No. 21-16215, 2025 WL 1788693, at *7 (D.N.J. June 30, 2025) (requiring expert testimony for blender design); *Mykolaitis v. Home Depot U.S.A., Inc.*, No. 13-1868, 2016 WL 590213, at *3 (D.N.J. Feb. 11, 2016) ("A stepladder is a subject matter beyond the common knowledge and

experience of an average juror, and thus, expert testimony is required."); *Florio*, 2020 WL 5234924, at *3 (D.N.J. Sept. 2, 2020) (requiring expert testimony for saw design); *Lauder v. Teaneck Volunteer Ambulance Corps*, 368 N.J. Super. 320, 332 (App. Div. 2004) ("[T]he locking mechanism of the gurney is sufficiently complex to require expert testimony."). Moreover, Plaintiff does not argue, and the Court does not find, that the Saw presents the kind of "self-evident defect for which expert testimony would not be required." *Rocco v. N.J. Transit Rail Operations, Inc.*, 330 N.J. Super. 320, 341 (App. Div. 2000).

In short, Plaintiff needs to provide competent expert testimony showing the Saw's design was defective, and that an alternative, practical design existed. He failed to do so. Because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial," *Celotex*, 477 U.S. at 323, the Court **GRANTS** Defendants' summary judgment motion as to Plaintiff's design defect claim.

**b. Manufacturing Defect**

A manufacturing defect "occurs when the product comes off the production line in a substandard condition based on the manufacturer's own standards or identical units that were made in accordance with the manufacturing specifications." *Myrlak*, 157 N.J. at 98. The plaintiff need not "prove a specific manufacturer's defect." *Moraca v. Ford Motor Co.*, 66 N.J. 454, 458 (1975). They need only show "proof, in a general sense and as understood by a layman, that 'something was wrong' with the product." *Scanlon*, 65 N.J. at 591. Even so, "[t]he mere occurrence of an accident and the mere fact that someone was injured are not sufficient to demonstrate the existence of a defect." *Myrlak*, 157 N.J. at 98. To prove a manufacturing defect, the plaintiff may offer

> (1) direct evidence that the defect arose in the hands of the manufacturer; (2) circumstantial evidence which would permit an inference that a dangerous condition existed prior to sale; for instance, "the age and prior usage of the product in relation to its expected life span, durability and effective operability without

> maintenance"; or (3) by negating other causes of the failure of the product for which the defendant would not be responsible, in order to create an inference that the defect was attributable to the manufacturer.

*Toms*, 304 F. App'x at 125 (quoting *Scanlon*, 65 N.J. at 591–93). Under the "indeterminate product test," the jury may infer "that the harmful incident was caused by a product defect, and that the defect was present when the product left the manufacturer's control," if the plaintiff shows their injury "(a) was of a kind that ordinarily occurs as a result of a product defect" and "(b) was not, in the particular case, solely the result of causes other than product defect existing at the time of sale or distribution." *Myrlak*, 157 N.J. at 104.

*1. Direct Evidence*

Plaintiff offers no direct evidence that a defect in the Saw arose in the manufacturer's hands. This is not unusual. Direct evidence of a manufacturing defect is "rare, since generally it would require the testimony of someone who was present and examined the product of the time of production." *Scanlon*, 65 N.J. at 592. Plaintiff offers no evidence from someone who examined the Saw as it rolled off the assembly line.

*2. Circumstantial Evidence*

Circumstantial manufacturing defect evidence is such that "would permit an inference that a dangerous condition existed prior to sale." *Id.* at 592–93 (quoting *Jakubowski*, 42 N.J. at 184). The most important circumstantial considerations are "the age and prior usage of the product in relation to its expected life span, durability and effective operability without maintenance." *Id.* at 593. "The product itself must be of a type permitting the jury . . . to infer that in the normal course

of human experience an injury would not have occurred at this point in the product's life span had there not been a defect attributable to the manufacturer." *Id.*

Plaintiff needs expert testimony to circumstantially prove a manufacturing defect. An average juror likely does not understand, among other things, how a table saw is manufactured, the mechanics of how a table saw operates, the relationship between the height of a saw blade adjustment mechanism and the physics of a kickback accident, what separates a normal table saw from a defective saw, and the changes to a table saw over time that could render it prone to an accident. *Cambridge Mut. Fire Ins. Co. v. STIHL, Inc.*, No. 22-5893, 2026 WL 699897, at *4 (D.N.J. Mar. 12, 2026) ("While the average juror likely has experience with using and charging a battery, they likely do not understand, among other things, how batteries are manufactured . . . ."); *Kuhar v. Petzl Co.*, No. 19-3900, 2022 WL 1101580, at *4 (3d Cir. Apr. 13, 2022) (requiring expert testimony to prove defect involving a "simple bolt" where bolt was part of a "micrograb," because "[t]he average juror, even assuming some familiarity with micrograbs, is unlikely to understand, among other things, the engineering design considerations; metallurgical aspects of plating the bolt; or the principles of physics at work on the bolt when in use."); *K & G Men's Co. v. Kibalko*, No. 06-5768, 2010 WL 1931131, at *4 (D.N.J. May 12, 2010) ("Because most jurors are unlikely to possess an understanding of the inner-workings of a commercial steam iron and to know the circumstances under which such an iron could cause a fire, expert testimony will be necessary to assist jurors in assessing defect and causation."); *State Farm Fire & Cas. Co. v. Kaz, Inc.*, 2008 WL 2122639, at *4 (N.J. Super. Ct. App. Div. May 22, 2008) ("The electrical wiring of an appliance and the electrical infrastructure of a house are not matters within a jury's common knowledge.").

### 3. *Evidence Negating Other Causes*

A plaintiff may also prove a manufacturing defect with evidence that "negate other causes of the failure of the product for which the defendant would not be responsible, in order to make it reasonable to infer that a dangerous condition existed at the time the defendant had control." *Jakubowski*, 42 N.J. at 184. The cause of the failure must, in other words, be attributable to the manufacturer. *Id.*

Table saw manufacturing, distribution, sale, handling, and possible causes of failure fall outside "the common knowledge of the factfinder" and require "scientific, technical, or other specialized knowledge." *Jerista*, 185 N.J. at 199. Otherwise, "it would amount to mere guesswork" for the jury "to conclude . . . that the defect or dangerous condition of the [Saw] was attributable to the period of manufacture . . . rather than," for instance, delivery or "possible subsequent misuse or overuse." *Jakubowski*, 42 N.J. at 187–88; *see also Mykolaitis*, 2016 WL 590213, at *4 ("Without an expert testifying as to the age of the ladder, whether the ladder underwent normal 'wear and tear,' and how the various parts of a ladder interact with one another, the jury is left to speculate as to the cause of Plaintiff's accident."). Thus, expert testimony is required to negate other causes of the Saw's failure.

### 4. *Indeterminate Product Test*

Under the indeterminate product test, Plaintiff must show the accident "(a) was of a kind that ordinarily occurs as a result of a product defect" and "(b) was not, in the particular case, solely the result of causes other than product defect existing at the time of sale or distribution." *Myrlak*, 157 N.J. at 104. "Generally, when a plaintiff relies on such a test, the use of expert testimony is not required." *Kuhar*, 2022 WL 1101580, at *5 (quoting *Jerista*, 185 N.J. at 199). But where the inference of a defect "falls outside of the common knowledge of the factfinder and depends on

scientific, technical, or other specialized knowledge is expert testimony required." *Jerista*, 185 N.J. at 199. The causes of table saw accidents, table saw defects, and the kind of table saw defects that exist between manufacture and use, are not matters of common knowledge. Thus, expert testimony is, in this case, necessary to prove a defect under the indeterminate product test. *Kuhar*, 2022 WL 1101580, at *5 ("Because of the particular facts in this situation, the knowledge needed to understand the function of the bolt and micrograb falls outside of a factfinder's common knowledge.").

Because Plaintiff has failed to provide expert testimony showing the Saw had a manufacturing defect, there is "a complete failure of proof concerning an essential element of the nonmoving party's case." *Celotex*, 477 U.S. at 323. Accordingly, the Court **GRANTS** Defendants' summary judgment motion as to Plaintiff's manufacturing defect claim.[10]

***ii. Breach of Warranty Claim***

The NJPLA limits "the expansion of products-liability law." *Zaza v. Marquess & Nell, Inc.*, 144 N.J. 34, 47 (1996) (citation omitted). To this end, the NJPLA "effectively creates an exclusive statutory cause of action for claims falling within its purview." *Hindermyer v. B. Braun Med. Inc.*, 419 F. Supp. 3d 809, 817 (D.N.J. 2019) (quoting *Repola v. Morbark Indus., Inc.*, 934 F.2d 483, 492 (3d Cir. 1991)). The NJPLA "generally subsumes common law product liability claims." *Id.* This includes "any claim or action brought by a claimant for harm caused by a product,

[10] In his motion, Plaintiff argues the Saw's manual "clearly misrepresents the product's capabilities." (Pl.'s Mot. Summ. J. at *3.) Plaintiff asserts this "is not a new claim," but he is mistaken. (*Id.*) Judge Espinosa previously addressed Plaintiff's "suggestion that he might wish to pursue a new theory of liability based on failure to warn." (*See* Mar. 4, 2026 Order at 2.) Judge Espinosa informed Plaintiff that "because the currently operative Complaint pleaded a products liability claim based on alleged design defect, but not failure to warn, Plaintiff would need to seek leave to amend the Complaint if he wished to add a failure to warn products liability claim." (*Id.* at 2–3.) Plaintiff did not seek leave to amend his complaint. (*Id.* at 6.) Accordingly, Judge Espinosa ordered "[t]his action will proceed based solely on the allegations and claims set forth in the Complaint, as developed in discovery, which is now closed." (*Id.*) Plaintiff did not appeal Judge Espinosa's order. While Plaintiff is *pro se*, he must still comply with Court orders. *Mala*, 704 F.3d at 244–45. Accordingly, the Court declines the invitation to consider Plaintiff's new theory of liability, raised well after the close of discovery in a summary judgment brief and in violation of Judge Espinosa's prior order.

irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty." N.J.S.A. 2A:58C-1. "[B]reaches of the express warranty are explicitly excluded from the scope of the statute." *Hindermyer*, 419 F. Supp. 3d at 829.

Here, Count II of the Complaint is a cause of action for breach of express warranty. Defendants argue the Court should dismiss Count II as subsumed by the NJPLA. The Court disagrees. The NJPLA "explicitly exclude[s]" breach of express warranty claims. *Id.*

Even so, Plaintiff fails to state a claim for breach of express warranty. To do so, Plaintiff must show (1) a seller made "an affirmation of fact, promise, or description related to goods or the seller must provide a sample or model of goods"; (2) the affirmation, promise, description, sample or model served "as a basis of the bargain between the seller and the buyer"; (3) the buyer "accept[ed] the goods; and (4) the goods do "not conform to the affirmation, promise, description, sample, or model." *Dzielak v. Whirlpool Corp.*, 83 F.4th 244, 260 (3d Cir. 2023). A seller creates an express warranty through:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>
> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

N.J.S.A. 12A:2-313(1). A statement can become a warranty "even if unintended to be such by the seller, if it could fairly be understood to constitute an affirmation or representation that the product possesses a certain quality or capacity relating to future performance." *Volin v. Gen. Elec. Co.*, 189 F. Supp. 3d 411, 420 (D.N.J. 2016) (cleaned up). A plaintiff in a warranty action "need not establish the existence of a defect; the failure of the goods to perform as warranted is sufficient."

*Mendez v. Shah*, 28 F. Supp. 3d 282, 294 (D.N.J. 2014) (citation omitted). But they must still offer "[p]roof of causation." *Id.*

"Traditionally, a seller's warranties ran only to the immediate buyer, and did not extend to remote parties in the product's distribution chain or parties outside of the distribution chain." *In re Jacoby Airplane Crash Litig.*, No. 99-6073, 2005 WL 8179785, at *5 (D.N.J. Aug. 26, 2005). "New Jersey has abolished the privity requirement for claims asserting strict liability or breach of the implied warranty of merchantability." *Id.* "However, for claims asserting breach of express warranty, which sound in contract rather than tort, the privity requirement remains largely intact." *Id.* New Jersey law has a limited exception to the privity requirement, providing:

> A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty.

N.J.S.A. 12A:2-318. "Thus, a natural person who is a member of the household or guest of a buyer and who receives personal injuries from the defective product, may recover for those injuries from a seller under the U.C.C." *Paramount Aviation Corp. v. Agusta*, 288 F.3d 67, 74 (3d Cir. 2002).

Here, it is undisputed that Plaintiff did not buy the Saw; an unrelated contractor did in 2011. (*See* Pl. Dep 40:2–5.) Plaintiff came into possession of the Saw in 2019 after the contractor abandoned it. (*Id.* at 44:1–5.) Accordingly, Plaintiff—who did not buy the Saw and is neither a member of the contractor's family or household, nor a guest in the contractor's home—cannot state a claim for breach of the Saw's express warranty. If the Saw had an express warranty, it did not extend to Plaintiff. In any event, Plaintiff does not identify any "specific affirmations or promises by Defendants" giving rise to an express warranty. *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 707 (D.N.J. 2011). Nor does Plaintiff show how any affirmations or promises induced Plaintiff to take possession of the Saw. To the contrary, Plaintiff asserted he "didn't want

to take" the then-abandoned Saw because it was "a piece of junk." (*Id.* at 44:1–13.) Plaintiff only kept the Saw after Plaintiff's employer, the dealership, told him to do so. (*Id.* at 49:4–7.) So, Plaintiff fails to identify any affirmations or promises that formed the basis of the bargain for the Saw.[11]

Because Plaintiff fails to show an express warranty arose for the Saw, and any express warranty for the Saw would not extend to Plaintiff, the Court **GRANTS** Defendants' motion for summary judgment as to Plaintiff's express warranty claim.[12]

### D. The Court Denies Plaintiff's Cross-Motion for Summary Judgment

Local Civil Rule 56.1(a) requires the moving party to "furnish a statement which sets forth material facts as to which there does not exist a genuine issue." Providing a statement of material facts is not a matter of etiquette; it "allows the court, with the help of the parties, to isolate those facts for the purpose of applying the appropriate legal standard or controlling precedents." *Owens v. Am. Hardware Mut. Ins. Co.*, No. 11-6663, 2012 WL 6761818, at *3 (D.N.J. Dec. 31, 2012). Otherwise, "the Court is left to sift through often voluminous submissions in search of—sometimes in vain—the undisputed material facts." *Id.* "Judges are not like pigs, hunting for

[11] Even if Plaintiff could establish an express warranty for the Saw, his claim would be time-barred. An action for breach of warranty "must be commenced within four years" after "delivery is made." N.J.S.A. 12A:2-725(1)–(2). The contractor bought the Saw in 2011. Accordingly, the statute of limitations elapsed in 2015. Plaintiff sued in 2021.

[12] The Court notes that Count III of the Complaint asserts Plaintiff is "the intended third party beneficiary" under an insurance policy Defendants hold to pay medical expenses incurred from accidents, "regardless of fault." (*See* Compl. at *14.) But Plaintiff lacks standing to enforce an unnamed insurance policy Defendants supposedly hold. "The essence of contract liability to a third party is that the contract be made for the benefit of said third party within the intent and contemplation of the contracting parties." *Rieder Cmtys., Inc. v. Township of North Brunswick*, 227 N.J. Super. 214, 222 (App. Div. 1988) (citation omitted). "Unless such a conclusion can be derived from the contract or surrounding facts, a third party has no right of action under that contract despite the fact that he may derive an incidental benefit from its performance." *Id.* (citation omitted). Here, Plaintiff has neither identified the supposed insurance contract at issue, nor demonstrated that the contracting parties intended for users of abandoned saws, like Plaintiff, to be beneficiaries. "There is no indication that the parties contemplated, much less intended, that third parties be granted a right of action under the [alleged insurance contract]." *Mendez v. Shah*, 28 F. Supp. 3d 282, 300–01 (D.N.J. 2014). Therefore, as in Counts I and II, there is "a complete failure of proof concerning an essential element of the nonmoving party's case." *Celotex*, 477 U.S. at 323.

truffles buried in the record." *United States v. Morton*, 993 F.3d 198, 204 n.10 (3d Cir. 2021) (quoting *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006)).

Correspondingly, the Rule provides "[a] motion for summary judgment unaccompanied by a statement of material facts not in dispute *shall* be dismissed." L. Civ. R. 56.1(a) (emphasis added); *see also Bailey v. Millenium Grp. of Del.*, No. 18-1188, 2023 WL 6971541, at *2 (D.N.J. Oct. 23, 2023) (collecting cases where courts denied summary judgment motions for failure to comply with Local Civil Rule 56.1(a)). Though Local Civil Rule 56.1(a) speaks in mandatory terms, the Court may excuse noncompliance where it "has a clear record of the facts on which to rule, no prejudice is caused, and there is substantial compliance with the Rule." *Bailey*, 2023 WL 6971541, at *3.

Here, Plaintiff has neither given the Court a clear record of the facts, nor substantially complied with the Rule. Instead, Plaintiff's motion includes nearly a thousand pages of exhibits,[13] the import of which he does not clearly explain throughout his twenty-eight-page motion, and the specific pages of which he cites only infrequently. (*See* Pls.' Mot. Summ. J.) This "makes it exceedingly difficult to discern whether there is a genuine dispute of material fact," *Bailey*, 2023 WL 6971541, at *3, leaving the Court "to sift through often voluminous submissions in search of—sometimes in vain—the undisputed material facts." *Owens*, 2012 WL 6761818, at *3. "Plaintiff, as the movant, bears the initial burden of demonstrating that no genuine dispute of material fact exists, and Plaintiff fails to meet this burden." *Bailey*, 2023 WL 6971541, at *3. On this basis alone, the Court **DENIES** Plaintiff's cross-motion for summary judgment.

[13] Rather than attach the exhibits to his motion, Plaintiff includes a QR code which, if scanned, directs the user to a Google drive.

Even if the Court were to excuse Plaintiff's non-compliance with Rule 56.1, he fails to meet his summary judgment burden to show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "It is well settled that only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." *Smith v. Davidov*, No. 22-4998, 2026 WL 2253876, at *5 (D.N.J. Aug. 4, 2026) (quoting *Countryside Oil Co. v. Travelers Ins. Co.*, 928 F. Supp. 474, 482 (D.N.J. 1995)). At the summary judgment stage, the moving party need only show the evidence in support of their motion "*can* be authenticated and admitted at trial." *Id.* (emphasis added).

Here, however, Plaintiff cannot show the evidence admissible at trial is such that a reasonable jury could not rule for Defendants. Plaintiff needs expert testimony to show the Saw was defectively designed or manufactured. Because Plaintiff's sole liability expert is inadmissible, he cannot establish that any admissible evidence permits only a verdict in his favor. And so, Plaintiff fails to meet his burden as the party moving for summary judgment.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's request to reinstate Coons (ECF No. 123) is **GRANTED**; Coons' testimony is **EXCLUDED**; Defendants' motion for summary judgment (ECF No. 112) is **GRANTED**; and Plaintiff's cross-motion for summary judgment (ECF No. 115) is **DENIED**. An appropriate Order accompanies this Opinion.

**DATED: 10/30/2026**

**JULIEN XAVIER NEALS**
**United States District Judge**